# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| JANE DOE, | } |
| Plaintiff, | } |
| v. | } Case No.: 5:14-cv-02029-HGD |
| THE UNIVERSITY OF ALABAMA IN HUNTSVILLE, BRENT WREN, PhD., Sgt. JOHN BESWICK, and REGINA YOUNG HYATT, PhD., | } |
| Defendants. | } |

## MEMORANDUM OPINION AND PARTIAL DISMISSAL ORDER

This case involves a public university's investigation into a student's claims that another student sexually assaulted her in a university dorm. Plaintiff Jane Doe alleges that defendant University of Alabama in Huntsville discriminated against her because of her sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*[1] Ms. Doe also alleges that UAH, Associate Provost and NCAA Representative Brent Wren, UAH Police Sergeant John Beswisk, and Dean of Students Regina Young Hyatt violated her rights to equal protection under the Fourteenth Amendment. Ms. Doe seeks relief from the individual defendants under § 1983.

---

[1] Ms. Doe improperly identified the University of Alabama in Huntsville as a defendant to this action. The Board of Trustees of the University of Alabama, for and on behalf of the University of Alabama in Huntsville, is the proper defendant. (Doc. 13, p. 1). The Court refers to the Board as UAH throughout this opinion.

This case is assigned to Magistrate Judge Harwell Davis.  On August 31, 2015, Judge Davis entered a report and recommendation concerning the defendants' Rule 12(b)(6) motion to dismiss.  (Doc. 17).  In his report, Judge Davis recommended that the Court grant the defendants' motion and dismiss this action with prejudice.  (Doc. 17, p. 27).  Judge Davis explained to the parties that they had fourteen days in which to file objections to the recommendation.  (Doc. 17, pp. 27-29).  Ms. Doe filed objections to the recommendation.  (Doc. 19).[2]  The defendants did not object to Judge Davis's report.  Because the parties have not consented to dispositive jurisdiction by a magistrate judge, the Clerk randomly selected the undersigned to review Judge Davis's report and Ms. Doe's objections.

I.   STANDARD OF REVIEW

When a party objects to a report and recommendation regarding a motion to dismiss, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(B)-(C).  The Court reviews *de novo* legal conclusions in a report and reviews for clear error factual findings to which no objection is made. *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993); *see also LoConte v.*

---

[2] Ms. Doe also filed a motion for leave to file an amended complaint.  (Doc. 18).  Because this case is assigned to Judge Davis and is before the undersigned only for a review of Judge Davis's report and Ms. Doe's objections, the Court does not rule on the pending motion. As explained in greater detail below, should Judge Davis grant Ms. Davis's motion for leave to file an amended complaint, supplemental factual allegations in the amended complaint provide additional support for Ms. Doe's Title IX claim.  (*See* Doc. 18-1).

*Dugger,* 847 F.2d 745, 749 (11th Cir.1988); *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006). A district court "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

When evaluating a motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Brophy v. Jinagbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015).

## II.  DISCUSSION

Ms. Doe lodges three specific objections to Judge Davis's report. First, Ms. Doe complains that the report omits certain alleged facts relevant to her Title IX claim. Second, Ms. Doe objects to Judge Davis's conclusion that she has failed to sufficiently allege that UAH acted with deliberate indifference to known sexual harassment. Third, Ms. Doe asks the Court to allow discovery before dismissing with prejudice her § 1983 claims.

### A.  Ms. Doe's Title IX Claim

Ms. Doe's Title IX claim arises out of UAH's handling of her sexual assault complaint against UAH hockey player Lasse Uusivirta. Construing the facts that Ms. Doe alleged in her original complaint in the light most favorable to Ms. Doe, the Court finds that Ms. Doe has sufficiently alleged that UAH acted with deliberate indifference to known sexual harassment.

In her objections, Ms. Doe recites many of the alleged facts that give rise to an inference that UAH acted with deliberate indifference:

- UAH Police Sergeant John Beswisk "first attempted to talk Ms. Doe out of doing anything about the attack by mentioning that 'people who hang out at the hockey dorms share girls all the time' and that it 'was completely normal and okay to have sex with someone that [Doe] didn't know.'" (Doc. 19, p. 2, quoting Doc. 1, ¶ 18).

- After Mr. Uusivirta confessed, Sergeant Beswick told Ms. Doe that "she had 'no case at all.'" (Doc. 19, p. 2, quoting Doc. 1, ¶ 22).

- Upon Sergeant Beswick's recommendation, Ms. Doe "submitted her case to the student conduct board. The UAH investigation was then closed on January 14, 2013, with no arrest being made or further action taken." (Doc. 19, p. 3, citing Doc. 1, ¶ 23).

- The student conduct board "determined that [Mr. Uusivirta] should be immediately expelled;" however, Assistant Provost Dr. Brett Wren reviewed Mr. Uusivirta's appeal and imposed a significantly reduced penalty. (Doc. 19, p. 3, citing Doc. 1, ¶ 24).

- UAH did not inform Ms. Doe that Mr. Uusivirta appealed the decision, and she "saw her assailant on campus and had to inquire to get any information whatsoever. During the next month Ms. Doe was fearful to be on campus, seriously anxious and depressed, and missed several classes." (Doc. 19, p. 3, citing Doc. 1, ¶¶ 27-29).

- Dr. Wren did not make a decision regarding the appeal until March 21, 2013. "By the time Wren took action on Uusivirta's appeal the hockey season had ended (on March 2, 2013), the upcoming season's schedule had been announced, and the semester was past the mid-point. Brent Wren is a public supporter of UAH hockey . . . . The new sanctions against Uusivirta[:] 1) would not take place during that semester because it was past the mid-point; 2) [placed] his suspensions specifically between hockey seasons, while allowing him to return to campus and the training facility just in time to begin practice for the following season; and 3) made no mention of the withdrawal of his athletic scholarship, which the student board specifically addressed." (Doc. 17, pp. 3-4, citing Doc. 1, ¶¶ 30-32).

4

- When Ms. Doe approached Dr. Wren to discuss his decision, Dr. Wren "refused to speak [to her] without another woman present in the room. . . . Then he refused to answer any of [Ms. Doe's questions], simply reiterating that UAH only expels students for academic misconduct." (Doc. 19, p. 5, quoting Doc. 1, ¶ 34).[3]

- After Dr. Wren issued his decision, Ms. Doe contacted outside law enforcement who arrested Mr. Uusivirta and charged him with first degree rape. A UAH hockey coach posted Mr. Uusivirta's bond. (Doc. 19, p. 5, citing Doc. 1, ¶ 38).

- The day after Mr. Uusivirta's arrest, even though Mr. Uusivirta already had admitted that Ms. Doe was unable to consent when he had sex with her, UAH's hockey coach posted on Twitter, "'Things are not always as they seem. Be careful to judge.'" (Doc. 19, p. 6, quoting Doc. 1, ¶ 39).

- Mr. Uusivirta left the United States after he was released from jail. UAH kept his name "on the UAH hockey roster until as late as April 2013, one day before his attorneys informed the court that he had skipped bail." (Doc. 19, p. 6, citing Doc. 1 ¶¶ 42, 41).

Ms. Doe's original complaint contains factual allegations that plausibly suggest that UAH's "'response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances'" and that UAH made Ms. Doe vulnerable to harassment. *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1295

---

[3] Ms. Doe argues in her objections that Dr. Wren's alleged statement to her is a "blatant misrepresentation of written University policy." (Doc. 19, p. 5). As support for this contention, Ms. Doe's relies on Section 6.21 of the UAH student handbook, which states that students charged with sexual misconduct may be punished by "the full range of sanctions outlined in the Student Code of Conduct including probation, suspension, and expulsion." (Doc. 19, p. 5, n. 2). Ms. Doe did not include this handbook language in either her original complaint or her proposed amended complaint. Were Ms. Doe to cite this portion of the student handbook in a pleading, these facts would provide support for her assertion that Dr. Wren misrepresented university policy.

(11th Cir. 2007) (quoting *Davis v. Monreo Cty. Bd. of Educ.,* 526 U.S. 629, 648 (1999)).

As noted above, *see supra* note 1, Judge Davis did not have the benefit of analyzing the defendants' motions against the additional allegations pleaded in Ms. Doe's proposed amended complaint. Although the Court finds that Ms. Doe's original complaint, standing alone, sufficiently pleads that UAH acted with deliberate indifference and states a Title IX claim, the Court briefly reviews allegations contained in the proposed amended complaint that further support her Title IX claim.

In her proposed amended complaint, Ms. Doe alleges that after the student conduct board recommended that UAH immediately expel Mr. Uusivirta, Ms. Doe "was informed that Dr. Hyatt, as Dean of Students had to verify the board's decision. This process took approximately one week, during which time the board met again and reached the same decision." (Doc. 18-1, ¶ 17). Section 7.5(k) of the UAH student handbook provides: "Sanction recommendations will be reviewed by the Provost/Executive Vice President for Academic Affairs prior to the dissemination of the Notice of Decision and Sanction. The Provost/Executive Vice President can return the decision to the Student Conduct Board or Hearing Officer for reconsideration." (Doc. 18-1, ¶ 18). Dr. Hyatt assumed the role of Provost/Executive Vice President for purposes of reviewing the student conduct board's decision. (Doc. 18-1, ¶ 18).

Without Ms. Doe's knowledge, Mr. Uusivirta appealed the student conduct board's decision to Dr. Wren, who served as UAH's NCAA representative. (Doc. 18-1, ¶ 20). Neither Dr. Hyatt nor the assistant dean of students informed Ms. Doe that the recommended expulsion was on hold. (Doc. 18-1, ¶ 21). On March 21, 2013, Dr. Wren vacated the expulsion and substituted lesser sanctions. (Doc. 18-1, ¶ 22).

These facts plausibly suggest that UAH may not have followed its own policy regarding Mr. Uusivirta's hearing. There was no process outlined in the student handbook by which a student could appeal to Dr. Wren after the Provost/Executive Vice President – or Dr. Hyatt as Dean of Students in this case – reviewed the student conduct board's recommendations regarding sanctions. Additionally, neither Dr. Hyatt nor Dr. Wren has the title of Provost/Executive Vice President for Academic Affairs. If one or both of these individuals reviewed the student conduct board's decision, and the Provost/Executive Vice President of Student Affairs did not review the decision, then UAH may have violated written university policy regarding review of recommended sanctions. If Ms. Doe receives an opportunity to amend her complaint, these allegations would shore up Ms. Doe's already adequately pleaded Title IX claim.

    **B.    Ms. Doe's § 1983 Claims**

        **1.    § 1983 Claims Against UAH**

The Court adopts Judge Davis's recommendation that the Court dismiss with prejudice Ms. Does' § 1983 claims against UAH. The Eleventh Amendment to the

7

Constitution of the United States provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. "Although the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." *Carr v. City of Florence,* 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 (1890)).

> There are two exceptions to Eleventh Amendment immunity:
>
> First, Congress can abrogate eleventh amendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Second, a state may waive its immunity expressly through legislative enactment. "[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

*Carr*, 916 F.2d 1521, 1524-25 (11th Cir. 1990) (internal footnote omitted).  Neither exception applies here.  Congress has not abrogated Eleventh Amendment immunity in § 1983 cases.  *Quern v. Jordan*, 440 U.S. 332, 338 (1979).  And the State of Alabama has not waived its immunity.  *See* Ala. Const. art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity.").  The Court

must dismiss the § 1983 claim against UAH as a matter of law. No amount of discovery will change this result.

Therefore, pursuant to Rule 12(b)(1), the Court will dismiss with prejudice Ms. Doe's § 1983 claims against UAH for lack of jurisdiction. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) ("[A] suit in which the State or one of its agencies or departments is named as defendant is proscribed by the Eleventh Amendment" regardless of the nature of the relief sought.); *Shuler v. Bd. of Trustees of Univ. of Ala.*, 480 Fed. Appx. 540, 544 (11th Cir. 2012) (finding no error in district court's decision to grant judgment in favor of UAB on plaintiff's § 1983 claims because the Board is entitled to Eleventh Amendment immunity); *Eubank v. Leslie*, 210 Fed. Appx. 837, 844 (11th Cir. 2006) (holding that "The University of Alabama Board of Trustees is a state agency" and finding that "the district court did not err in dismissing [the plaintiff's] claim for injunctive relief on Eleventh Amendment immunity grounds").

### 2. § 1983 Official Capacity Claims Against Dr. Wren, Sergeant Beswick, and Dr. Hyatt

The Court accepts Judge Davis's recommendation that the Court dismiss Ms. Doe's § 1983 official capacity claims for damages against Dr. Wren, Sergeant Beswick, and Dr. Hyatt because Eleventh Amendment immunity bars those claims. *See Jackson v. Ga. Dep't of Transp.,* 16 F.3d 1573, 1575 (11th Cir. 1994) ("Under the Eleventh Amendment, state officials sued for damaged in their official capacity are

immune from suit in federal court."). Again, this is a question of law; discovery will not change the analysis.

Ms. Doe's official capacity claims for injunctive relief are another matter. "Under the doctrine enunciated in *Ex parte Young*, . . . a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospsective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296, 298-299 (1997)). "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Id.* at 646. Ms. Doe's § 1983 official capacity claim for injunctive relief satisfies the *Ex parte Young* exception to Eleventh Amendment immunity.[4] Ms. Doe alleges that Dr. Wren, Sergeant Beswick, and Dr. Hyatt were policymakers for purposes of

---

[4] Ms. Doe's original complaint does not specifically seek injunctive relief under the headings for her § 1983 claims. (*See* Doc. 1, pp. 11-14). However, the preamble to Ms. Doe's original complaint states that she seeks both injunctive relief and damages for both her Title IX and § 1983 claims. (Doc. 1, ¶ 1). Ms. Doe's proposed amended complaint clarifies her prayer for injunctive relief as follows: "Plaintiff requests that this Court enter an Order directing the defendants to promulgate more effective policies and procedures to ensure that other students are not victimized in a similar manner." (Doc. 18-1, pp. 12, 15).

implementing UAH's policies and practices concerning sexual assault investigations. (Doc. 1, ¶ 61). Therefore, at the pleading stage, Ms. Doe has alleged facts suggesting that all three of these defendants have official capacity to secure the prospective relief that she seeks. Accordingly, the Court will not dismiss Ms. Doe's § 1983 official capacity claims for injunctive relief against Dr. Wren, Sergeant Beswick, and Dr. Hyatt.

### 3. § 1983 Individual Capacity Claims Against Dr. Wren, Sergeant Beswick, and Dr. Hyatt

Although Ms. Doe states in her objections that she sued Dr. Wren, Sergeant Beswick, and Dr. Hyatt in their individual capacities, neither the original complaint nor the proposed amended complaint specifically asserts a claim against these defendants in their individual capacities. If she intends to sue these defendants in their individual capacities, Ms. Doe must provide a specific allegation "to ensure [the defendants] receive sufficient notice with respect to the capacity in which he is being sued." *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1047 (11th Cir. 2008).[5] On the face of the complaint, Ms. Doe has not stated a § 1983 claim

---

[5] In their motion to dismiss, the defendants stated "[t]he [c]omplaint does not plead § 1983 claims against the individual Defendants in their personal capacity. If however, the Court should disagree and rule that the Complaint does adequately plead claims against individual Defendants, then the Defendants would ask the Court for permission to amend this Motion to Dismiss to address any personal capacity claims." (Doc. 13, ¶ 12). Because the parties have not briefed the issue of qualified immunity with respect to potential § 1983 individual capacity claims in this case, the Court will not address the merits of such a claim at this juncture.

against Dr. Wren, Dr. Hyatt, or Sergeant Beswick in his or her individual capacity. Therefore, there is no § 1983 individual capacity claim for the Court to address.

## III. CONCLUSION

For the reasons discussed above, the Court **DISMISSES WITH PREJUDICE** Ms. Doe's § 1983 claims against UAH. The original complaint contains no § 1983 individual capacity claim against Dr. Wren, Sergeant Beswick, and Dr. Hyatt.

Ms. Doe's Title IX claim against UAH and Ms. Doe's § 1983 official capacity claims for injunctive relief against Dr. Wren, Sergeant Beswick, and Dr. Hyatt will proceed. The Court returns these claims to Judge Davis for proceedings consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 31, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE